In re A.J. LANE & CO., INC., Lane Homes, Inc., Lane Management, Inc., Fountainhead Associates of Westborough, Andrew J. Lane, Debtors.

Bankruptcy Nos. 89–40268–JFQ to 89–40272–JFQ.

United States Bankruptcy Court, D. Massachusetts.

Oct. 21, 1991.

266

George Kelakos, Cohn, Roitman & Kelakos, Boston, Mass., for Stanley Miller, trustee.

George Tetler, Bowditch & Dewey, Worcester, Mass., for creditors' committee.

Charles Dougherty, Hill & Barlow, Boston, Mass., for debtor.

## OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

Stanley Miller (the "Trustee"), the chapter 11 trustee in these consolidated cases, requests authority to abandon three properties: the Chapel Hill Apartments in Framingham, Massachusetts, the Cliffside Apartments in Sunderland, Massachusetts, and the partnership interest of the principal debtor, Andrew J. Lane (the "Debtor"), in Fountainhead Associates of Westborough, a partnership which owns the Fountainhead Apartments in Westborough, Massachusetts. The Debtor objects on the grounds that (i) the statutory requisites for abandonment are not present, and (ii) should abandonment be otherwise permissible, it would shift foreclosure tax conse-quences from the bankruptcy estates to the Debtor and would destroy the Debtor's opportunity for a fresh start. Presented are novel issues concerning the extent of a trustee's abandonment powers.

## I. FACTS

At the time of the Trustee's notice of intention to abandon, First Mutual Bank of Boston ("First Mutual"), the holder of second mortgages with recourse rights, had been granted relief from the automatic stay and had scheduled foreclosure sales of all three apartment complexes. The Trustee's sole reason for abandoning the properties was his desire to avoid the substantial income tax liability that would be incurred by the bankruptcy estates should the estates be considered owners at the time of the foreclosure sales. The Trustee's notice of intention to abandon states only that the Trustee "intends to abandon" the properties, without specifying whether he intends to abandon them to the Debtor or to First Mutual. It is clear, however, from the Trustee's memorandum of law that he intended to abandon them to the Debtor.

At the hearing, it was estimated that the properties have a total fair market value of $53 million and a present tax basis of $12.1 million, so that the foreclosure sales would produce a gain of $40.9 million and a tax liability for the estates of $3.27 million, even with the benefit of the substantial operating loss carryforwards available to the estates. If the Debtor bears the tax consequences, it was estimated that the tax would total $13 million because the net operating loss carryforwards would not be available to the Debtor until the bankruptcy estates are closed.

After the hearing, the Trustee and the Debtor were able to obtain refinancing for the Fountainhead and Chapel Hill Apartments in sums sufficient to discharge the second mortgages held by First Mutual, more junior mortgages held by Bank of New England, N.A., and the first mortgages of John Hancock Life Insurance Company. The Fountainhead and Chapel Hill Apartments are now owned and managed by the Debtor's partnership and the Debt-

or, respectively, under a joint plan of reorganization. The Trustee has accordingly withdrawn his request to abandon those two properties. But foreclosure on the Cliffside Apartments could not be avoided. That property, with a tax basis of about $5.1 million, was sold at foreclosure to First Mutual for $25,000, subject to a John Hancock mortgage and accrued real estate taxes. Like the other properties, its encumbrances exceeded its value.

## II. ANCILLARY REQUESTS

■ In conjunction with the Trustee's notice of intention to abandon, the Trustee and the Official Committee of Unsecured Creditors have jointly moved for an order declaring that the question of whether the Debtor or the bankruptcy estate should bear the tax burden is to be determined based upon the final order concerning abandonment, including any order on appeal, even though foreclosure is completed prior to the final adjudication of the Trustee's right to abandon. They request, in other words, an order declaring that title to the Cliffside Apartments is to be considered to rest prior to the foreclosure in accordance with the final adjudication of the abandonment issue—in the bankruptcy estate if abandonment is not authorized and in the Debtor if it is authorized. The Debtor does not oppose this request. I therefore grant it.

■ The Debtor has also filed an ancillary motion. Relying upon § 505(a) of the Bankruptcy Code, the Debtor asks the court to determine whether he or his bankruptcy estate bears the tax liability. He argues that the court deciding the question of abandonment should also decide the tax issue because adjudication of abandonment requires evaluation of the tax consequences which drive the Trustee's abandonment request. That evaluation, says the Debtor, may be different from the actual adjudication of the tax issue if adjudication of that issue takes place elsewhere. The Trustee opposes this request on the ground that he intends to proceed under § 505(b) whereby he would file a tax return for the estate and obtain expedited processing of the return from the taxing authorities, with this court adjudicating the tax consequences only in the event of a contest between the estate and the taxing authorities.

I conclude, for several reasons, that the tax issue should be adjudicated here in conjunction with a decision on abandonment. First, as urged by the Debtor, a decision on abandonment necessarily involves an evaluation of the tax consequences of abandonment followed by foreclosure. For example, as shall be seen, the Debtor argues that abandonment itself is a taxable event so that granting the Trustee's request does not avoid the tax liability that would be incurred by the estate should foreclosure occur without prior abandonment. Second, if I render a decision on the tax question in the present context, I and any appellate court will have done so after consideration of the opposing arguments of the Debtor and the Trustee. If the procedure sought by the Trustee is followed, the parties primarily involved would be the Trustee and the federal and state taxing authorities. The Internal Revenue Service, however, has issued a private letter ruling which concedes that abandonment during the case has no tax consequences to the estate, on the ground that "termination of the estate" as it appears in 26 U.S.C. § 1398(f)(2) (1988), discussed below, includes termination of the estate's interest in property by virtue of abandonment or exemption. Prv.Ltr.Rul. 90–17075 (January 31, 1990). Although the letter ruling may not apply to abandonment in the context of a pending foreclosure, the ruling certainly indicates the Service's general inclination to consider abandonment a non-taxable event. Thus there may well be no contest between the taxing authorities and the Trustee, to the prejudice of the Debtor. Finally, economy in judicial and legal resources dictate that the tax question be adjudicated now; it has been briefed and argued.

## III. ABANDONMENT—GENERAL PRINCIPLES

### A. *Prior Act*

Although the prior Bankruptcy Act permitted a debtor to obtain title to patent,

copyright or trademark applications not prosecuted by the trustee,[1] and authorized the trustee to reject executory contracts or unexpired leases,[2] it contained no general authorization for abandonment of property by the bankruptcy estate. Analogizing abandonment to rejection of executory contracts, the courts nevertheless permitted the trustee to abandon property which was worthless or encumbered beyond its value, or for some other reason would bring no benefit to the bankruptcy estate.[3] "This judge made rule served the overriding purpose of bankruptcy liquidation: the expeditious reduction of the debtor's property to money, for equitable distribution to creditors ... Forcing the trustee to administer burdensome property would contradict this purpose, slowing the administration of the estate and draining its assets." *Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 508, 106 S.Ct. 755, 763, 88 L.Ed.2d 859 (1986) (Rehnquist, J., dissenting).

### B. *Bankruptcy Code*

Section 554 of the Bankruptcy Code, quoted in the margin,[4] now governs the ability of the trustee or other estate representative to abandon property of the estate. Property may be abandoned at the request of the trustee, or the trustee may be ordered to abandon property, if it is "burdensome to the estate" or is of "inconsequential value and benefit to the estate." Any property which had been scheduled and not otherwise administered at the time of the closing of the case is treated as abandoned to the debtor and fully administered for the purpose of closing the case.

### C. *To Whom Property May Be Abandoned*

■ With respect to property of the estate remaining unadministered at the close of the case, § 554(c) provides that the property is deemed "abandoned to the debtor." But with respect to property sought to be abandoned during the case, which is the situation here, subsection (a) states only that the "trustee may abandon" the property, with no direction that it is to be abandoned to the debtor. This was intentional, as explained by legislative history: "Abandonment may be to any party with a possessory interest in the property abandoned." H.R.Rep. No. 595, 95th Cong., 1st Sess. 377 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 92 (1978). U.S.Code Cong. & Admin.News 1978, pp. 5787, 5878, 5963, 6333. A "possessory interest" is defined as a "right to exert control over specific land to the exclusion of others" or a "[r]ight to possess property." Black's Law Dictionary 1049 (5th ed.1979). *See In re Dewsnup*, 87 B.R. 676, 681 (Bankr.D.Utah 1988), *aff'd*, 908 F.2d 588 (10th Cir.1990), *cert. granted*, —— U.S. ——, 111 S.Ct. 949, 112 L.Ed.2d 1038 (1991); *In re Cruseturner*, 8 B.R. 581, 591 (Bankr.D.Utah 1981).

The Debtor had a right to possession of the property at the time of the Chapter 11 filing. At the filing, that right passed to the estate. The Debtor's right of possession thus qualifies him as a one party to whom abandonment may be made, and this is confirmed by subsection (c) authorizing abandonment of unadministered property to the debtor at the close of the case.

---

**1.** 11 U.S.C. § 110a(1) (repealed 1978).

**2.** 11 U.S.C. § 110b (repealed 1978).

**3.** 4 Lawrence P. King *Collier on Bankruptcy* Paragraph 554.01 (15th ed. 1990) and cases cited.

**4.** 11 U.S.C. § 554 (1988) provides:
(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
(d) Unless the court orders otherwise, property of the estate that is not abandoned under section (a) or (b) of this section and that is not administered in the case remains property of the estate.

First Mutual also qualifies as a recipient by reason of its possessory rights. Having been granted relief from the automatic stay, it was free to foreclose upon its mortgage. Although it chose to foreclose in the customary manner through exercise of its power of sale, it also had the right to possession upon default and the right to foreclose through possession maintained for a period of three years. Mass.Ann. Laws ch. 183, § 26 (Law.Co-op.1987); Mass.Ann.Laws ch. 244, § 1 (Law.Co-op. 1986). Indeed, its right to possession was superior to that of the Debtor at the time of the abandonment request.

### D. *Inconsequential Value and Benefit to the Estate*

■ The Cliffside Apartments are unquestionably encumbered beyond their value. It does not follow, however, that the property is of "inconsequential value and benefit to the estate." Unless First Mutual and the other mortgage holders make an election under § 1111(b)(2), their claims are secured claims only to the extent of the value of their mortgage interests. 11 U.S.C. § 506(a) (1988). Whether or not § 1111(b)(2) elections are made, these mortgage interests are subject to a so-called "cram-down" plan under which a proposed stream of payments totaling the entire debt need only have a present value equal to the value of the mortgage interest. 11 U.S.C. § 1129(b)(2)(A) (1988).

Foreclosure of the Cliffside Apartments of course actually took place. But at the time of the proposed abandonment, the parties were attempting to avoid foreclosure of all three apartment complexes and were successful as to the Fountainhead and Chapel Hill Apartments. Surely their efforts concerning the Cliffside Apartments had some chance of success. If successful, this property with the other two would have been central to the chapter 11 plan of reorganization. Throughout the case, the parties have referred to all three properties as the "crown jewels."

There is another reason that abandonment of the Cliffside Apartments should not be authorized on the ground that the property had inconsequential value and benefit to the estate. Even if the property meets this statutory standard, abandonment is unnecessary on that ground because the then-pending foreclosure sale could just as easily accomplish the technical function of removing the property from the bankruptcy estate.

### IV. TAX CONSEQUENCES AND REQUISITE BURDEN TO THE ESTATE

The Trustee places prime reliance upon the authorization in § 554 for abandonment of property that is "burdensome to the estate." The Trustee asserts that unless abandonment is permitted, foreclosure will bring about substantial federal and state income tax liability to the bankruptcy estate, and that this makes the property burdensome to the estate.

The Debtor contends that the property is not burdensome to the estate because its abandonment will not rid the estate of the tax consequences. The estate, says the Debtor, would still be taxed under any one or more of three theories: (i) abandonment itself is a taxable event because it constitutes a sale or exchange of the property; (ii) under the doctrine of the *Court Holding* decision, discussed later, the impending foreclosure sale cannot be transformed into a sale by the Debtor through a prior tax-motivated transfer; and (iii) abandonment would not escape taxation under 26 U.S.C. § 1398(f)(2) (1988) as a transfer at the "termination of an estate."

### A. *Abandonment as a Sale or Exchange*

■ Some settled principles must first be recognized. In the sale or exchange of property, a taxpayer is chargeable with income on the excess of the amount realized over the adjusted basis. 26 U.S.C. § 1001(a) (1988). Foreclosure of a mortgage with recourse, such as we have here, is treated as a sale by the property owner notwithstanding the involuntary nature of the transaction. *Helvering v. Hammel*, 311 U.S. 504, 510, 61 S.Ct. 368, 371, 85 L.Ed. 303 (1941). The same is true with respect to foreclosure of a mortgage or

270

other lien where the holder of the lien has no recourse against the owner for a deficiency. *Helvering v. Nebraska Bridge Supply & Lumber Co.*, 312 U.S. 666, 61 S.Ct. 827, 85 L.Ed. 1111 (1941). The amount realized for income tax purposes in the sale of property subject to a nonrecourse mortgage equals the balance of the debt, whether the sales price is more or less than the debt or the property's value, and whether it is a sale to a third party or a deed in lieu of foreclosure. *Commissioner v. Tufts*, 461 U.S. 300, 103 S.Ct. 1826, 75 L.Ed.2d 863 (1983) (assumed nonrecourse mortgage exceeded value of property); *Crane v. Commissioner*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947) (property sold for more than nonrecourse debt); *Laport v. C.I.R.*, 671 F.2d 1028 (7th Cir.1982) (deed in lieu of foreclosure). If the mortgage is with recourse, and the transaction involves satisfaction of the entire debt, the amount realized is also the full amount of the debt. *Chilingirian v. Commissioner*, 918 F.2d 1251 (6th Cir.1990).

■ This brings us to the present case. The transaction in question here is a proposed surrender of property. *Yarbro v. Commissioner*, 737 F.2d 479 (5th Cir.1984), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1983) dealt with similar facts. The taxpayer had invested in raw land whose value subsequently declined below the amount due on a nonrecourse bank mortgage taken out at the purchase. Faced with increased carrying costs, the taxpayer in 1976 notified the bank that he was abandoning the property, but he declined the bank's request for a deed in lieu of foreclosure on the ground that he wished to have no further involvement with the property. The bank foreclosed the following year, and the taxpayer claimed an ordinary loss from the abandonment in his 1976 income tax return. The Commissioner contested the ordinary loss deduction on the ground that the taxpayer had incurred a capital loss because the surrender itself was a sale.

The court analyzed the transaction as a transfer of property by the taxpayer and the receipt of a benefit by him in the form of satisfaction of that portion of the debt equal to the property's value. It viewed that benefit as precisely the same as what was received by the taxpayer in *Nebraska Bridge Supply* through foreclosure of a nonrecourse tax lien. The court therefore held that the surrender constituted a sale or exchange. It could see no difference between the act of surrender before it and the deed in lieu of foreclosure involved in *Laport* and *Freeland*. It reasoned that both transactions are the functional equivalents of a foreclosure sale taxable to the owner under *Hammel* and *Nebraska Bridge Supply*, and that the taxpayer should not be able to change the tax consequences when the substance remains the same. It regarded the foreclosure which followed abandonment as merely a mechanical process to clear title. Conceding that the nonrecourse nature of the mortgage restricted the taxpayer's true benefit to the value of the secured claim discharged in the surrender, the court was constrained to follow *Tufts* in measuring the gain by reference to the full amount of the nonrecourse debt discharged.

The reasoning in *Yarbro* is inescapable. In the abandonment of overly-encumbered property, as in the granting of a deed in lieu of foreclosure, a benefit is received in the amount of the secured debt which is discharged, the very same benefit which flows from the foreclosure of a nonrecourse mortgage. Where, as here, the debt is of the recourse variety, it is of course possible for borrower and lender to agree upon the discharge of the entire obligation so that the borrower receives that additional benefit. But this only changes the amount of benefit; it does not prevent the abandonment from constituting a sale. In declining to treat abandonment as a transfer taxable to the bankruptcy estate, the *McGowan* and *Olson* decisions, discussed later in connection with 26 U.S.C. § 1398, failed to recognize that the estate received a benefit in the discharge of the secured portion of the debt. *See Samore v. Olson (In re Olson)*, 100 B.R. 458, 462–63 (Bankr. N.D.Iowa 1989), *aff'd*, 121 B.R. 346, 348 (N.D.Iowa 1990), *aff'd*, 930 F.2d 6, 8 (8th

Cir.1991); *In re McGowan*, 95 B.R. 104, 108 (Bankr.N.D.Iowa 1988).

The present facts, moreover, are even more compelling than those present in *Yarbro*. In *Yarbro*, foreclosure was apparently likely but not yet in process at the time of abandonment. Here, a foreclosure sale was scheduled to take place only weeks after the hearing. Moreover, here there was no possibility that abandonment would be unaccompanied by foreclosure. As demonstrated by the Trustee's withdrawal of his proposed abandonment of the Fountainhead and Chapel Hill properties, the Trustee's requested abandonment of the Cliffside Apartments is firmly linked to the property's foreclosure.

### B. *The Court Holding Doctrine*

■ In *Commissioner v. Court Holding Co.*, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945), the taxpayer, a corporation, had negotiated an oral agreement to sell an apartment building, which was its sole asset, and had received a deposit from the purchaser. Upon being advised by counsel that sale by the corporation would create a large income tax liability for it, the corporation then conveyed the building in a liquidating dividend to its two stockholders, who in turn conveyed it to the purchaser under the terms originally negotiated by the corporation. The purchaser received credit for the deposit that had been paid to the corporation.

The court held that the transaction was taxable to the corporation, just as though it had made the eventual sale. The court stated:

> The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant. *A sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title. To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress* (emphasis supplied).

324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981.

The *Court Holding* decision is quite similar to *Yarbro*. In *Court Holding*, the court treated the corporation as having made the sale for tax purposes even though its stockholders actually transferred title to the purchaser. In *Yarbro*, the court considered the transfer by abandonment as the taxable event and viewed the second transfer, the foreclosure, as only mechanics.

The taxpayer in *Court Holding* sought to avoid the double taxation involved in a liquidation where a corporation is taxed on the sale of assets and the stockholders are also taxed on the proceeds of the sale received in a dividend. Although such double taxation has been largely eliminated with the enactment of § 337 of the Internal Revenue Code, the *Court Holding* doctrine has been applied in many other situations. For example, in *Palmer v. Commissioner*, 354 F.2d 974 (1st Cir.1965), the taxpayer owned property which he mortgaged to secure the debt of his wholly-owned corporation. He negotiated a sale of the property to obtain funds to reduce the debt, and then deeded the property to the corporation so that it could make the sale and be taxed at its lower tax bracket. The court taxed the stockholder on the authority of *Court Holding*. The same result was reached in *Hallowell v. Commissioner*, 56 T.C. 600 (1971), where the taxpayer transferred appreciated stock from his personal brokerage account to his 96%–owned corporation, which sold the stock and reported the gain at its lower tax rate.

The Trustee seeks to accomplish here what was attempted in *Court Holding*—to transfer property already the subject of a sales transaction to another party for the sole purpose of having the other taxed on the sale. Here, a foreclosure sale rather

than a negotiated sale was pending, but there is no difference in substance. As in *Court Holding*, the purchaser and the terms of the sale remained unchanged.

C. *Section 1398 of the Internal Revenue Code*

There is no provision in the Internal Revenue Code specifically referring to abandonment. A "transfer", however, from the estate to the debtor is covered. So too is a transfer from the debtor to the estate; a transfer of assets, other than by sale or exchange, from a debtor to the bankruptcy estate is not a disposition with tax consequences. 26 U.S.C. § 1398(f)(1) (1988). With respect to the transfer of an asset from the estate to the debtor, § 1398(f)(2) provides:

(2) Transfer from estate to debtor not treated as disposition. In the case of a termination of the estate, a transfer (other than by sale or exchange) of an asset from the estate to the debtor shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the debtor shall be treated as the estate would be treated with respect to such asset.

The plain meaning of this provision is that it applies only to a transfer from the estate to the debtor at the termination of the estate. Any possible doubt is resolved by § 1398(i), which (except for substituting "an" for "the") uses the same phrase—"[i]n the case of a termination of the estate"—in permitting the debtor to succeed to the estate's unused net operating loss carryovers and other tax attributes. Section 1398(i) provides:

(i) Debtor succeeds to tax attributes of estate.

In the case of a termination of an estate, the debtor shall succeed to and take into account the items referred to in paragraphs (1), (2), (3), (4), (5), and (6) of subsection (g) in a manner similar to that provided in such paragraphs (but taking into account that the transfer is from the estate to the debtor instead of from the debtor to the estate). In addition, the debtor shall succeed to and take into account the other tax attributes of the estate, to the extent provided in regulations prescribed by the Secretary as necessary or appropriate to carry out the purposes of this section.

Under § 1398(g), an estate succeeds to a debtor's unused net operating loss carryovers and other tax attributes. At the beginning of the case, therefore, the estate acquires the debtor's property tax-free along with the debtor's tax attributes. At the end of the case, or more accurately at the "termination of the estate," the same is accomplished in reverse. That has not yet occurred here.

The design of the statute is clear. The party holding the property, whether the debtor or the estate, is also entitled to any available net operating loss carryover, so that if that party incurs a taxable gain in the disposition of the property he can use the net operating loss carryover to offset the gain. The Trustee's proposed abandonment would destroy this symmetry. If the proposed abandonment here were considered to run to the Debtor for title and tax purposes and be tax-free, so that the Debtor would acquire the same low basis in the property as that enjoyed by the estate, the Debtor would incur a large gain from the foreclosure sale without having the net operating loss carryover available to offset that gain. That would be particularly unfair here. The Debtor estimated that imposition to the estate of the gain on foreclosure of all three properties would have resulted in a tax of $3.27 million, whereas if the Debtor were charged with the gain he would have to pay a tax of about $13 million. Although we do not have the parties' estimates of the tax that would be payable by the Debtor if foreclosure on the Cliffside Apartments alone is taxable to him, it is conceded that the tax would be substantial. The doctrine of either *Yarbro* or *Court Holding* would avoid this. Under *Yarbro*, abandonment is considered a taxable event; under *Court Holding*, the estate is treated as the seller in the foreclosure. In either case, the estate could use the net operating loss carryover to offset its gain.

Unfortunately, the decisions to date have ignored the interplay of subsections (f)(2) and (i). In *In re McGowan*, 95 B.R. 104 (Bankr.N.D.Iowa 1988), at the request of the secured party, a chapter 7 trustee abandoned farm machinery in which the debtor had no equity. The trustee obliged the debtor by treating the abandonment as taxable to the estate, but the taxing authorities thought otherwise. Despite the overriding presence of the secured party, the court treated the abandonment as a nontaxable transfer to the debtor under § 1398(f)(2). The court believed that the phrase "termination of the estate" could have any one of a number of meanings—completion of administration of the entire estate, termination of the estate's interest in specific property through abandonment, or termination of the estate's interest in particular property through foreclosure. The court interpreted the phrase to include abandonment, without even mentioning subsection (i), much less recognizing the symmetry between it and subsection (f)(2). Surprisingly, in the interpretation of this tax statute the court was influenced by the broad definition of "transfer" contained in § 101(50) of the Bankruptcy Code. The court expressed concern that treating abandonment as taxable to the estate would reduce the dividend to unsecured creditors. It expressed no similar concern for the effect that the debtor's tax liability from an ensuing foreclosure would have upon his fresh start.

The same bankruptcy judge revisited the issue in *Samore v. Olson (In re Olson)*, 100 B.R. 458 (Bankr.N.D.Iowa 1989), *aff'd*, 121 B.R. 346 (N.D.Iowa 1990), *aff'd*, 930 F.2d 6 (8th Cir.1991). Real estate abandoned by a chapter 7 trustee had been later sold at foreclosure, and the question was whether the debtor was taxable on the gain realized from foreclosure or whether a taxable exchange had occurred earlier at the time of the abandonment. The court stated: "It might be argued that the *McGowan* decision was overbroad in defining property abandonment during administration as 'termination of the estate' under 26 U.S.C. § 1398(f)(2) (1988). Perhaps the better definition of 'termination of the estate' is the

'closing of a case.'" 100 B.R. at 463. After recognizing that this definition would exempt the estate from tax consequences when property is abandoned by operation of law when it remains unadministered at the end of a case, the court concluded: "The court can see no reason why abandonment during administration should have a different tax effect. Abandonments during administration should also be covered by § 1398(f)(2)." *Id.*

The district court affirmed on the ground that the abandonment was not a sale or exchange, an issue also dealt with by the bankruptcy court; the district court chose not to discuss the "termination of the estate" requirement. *In re Olson*, 121 B.R. 346 (N.D.Iowa 1990). The Eighth Circuit affirmed on both issues, stating: "Furthermore, the bankruptcy estate does not incur a tax liability when property is abandoned by operation of law at the close of the bankruptcy estate. *See* I.R.C. § 1398(f)(2). We, like the bankruptcy and district courts, can see no reason why abandonment during the administration of the estate should have a different effect." *In re Olson,* 930 F.2d 6, 8. As we have seen, the unavailability of tax attributes under § 1398(i) is a reason.

The Trustee's attempts to avoid the correlation between §§ 1398(f)(2) and 1398(i) are unpersuasive. According to the Trustee, the two subsections should not be read in conjunction with each other because § 1398(f)(2) has its own provision concerning availability of the various tax attributes: "and the debtor shall be treated as the estate would be treated with respect to such asset." But this provision can refer just as well to the debtor's acquisition of the estate's basis in an asset as it can to the debtor's acquisition of the estate's tax attributes. In any event, the provision can hardly be regarded as making unnecessary the detailed references to tax attributes contained in subsection (i) and their comprehensive description set forth in subsection (g). Nor does the reference in § 1398(f)(2) to the transfer of "an asset" mean that Congress intended to include the transfer of a single asset during the case,

not just the transfer of the entire residual estate. The income tax consequences of any transfer, even the transfer of a group of assets, are necessarily determined with reference to the tax basis of each transferred asset, so that it is quite natural to refer to "an asset" when setting forth the tax consequences of any transfer.

## V. THE FRESH START POLICY

█ A bankruptcy statute such as § 554, moreover, is to be interpreted with basic bankruptcy policies in mind, including the policy of promoting a fresh start for the debtor. Where there is no other overriding policy, the fresh start policy is controlling. *E.g., Local Loan Co. v. Hunt,* 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (fresh start policy supports an interpretation which invalidates debtor's assignment of future wages as security for debts discharged in bankruptcy); *In re Lindberg,* 735 F.2d 1087, 1090 (8th Cir. 1984) (fresh start policy favors interpretation which permits debtors to claim new homestead exemption at time of conversion from chapter 13 to chapter 7). *Cf. Segal v. Rochelle,* 382 U.S. 375, 379–80, 86 S.Ct. 511, 514–15, 15 L.Ed.2d 428 (1966) (right to tax refund due to loss carryback resulting from losses incurred prior to bankruptcy deemed rooted in debtor's past so that inclusion of refund right in bankruptcy estate is not violative of fresh start policy).

Taxing the Debtor on the foreclosure following this proposed abandonment creates a clear burden on the Debtor's fresh start, and there is no countervailing policy which overrides this consideration. Enhancement of the distribution to creditors is of course also a basic policy of bankruptcy law. But here creditors are not significantly prejudiced if the gain is considered that of the estate. The estate can use the large net operating loss carryover which it inherited from the Debtor. Indeed, because large gains on the foreclosure sales of the Fountainhead and Chapel Hill properties have been avoided by the refinancing, the carryover still available may well entirely eliminate the estate's taxable gain from foreclosure of the Cliffside Apartments.

There is clear evidence, moreover, that Congress had the fresh start policy in mind in making tax attributes available to a debtor and his bankruptcy estate. Section 346 of the Bankruptcy Code, which applies to state and local taxes, contains provisions similar to those of §§ 1398 and 1399 of the Internal Revenue Code governing transfers between the estate and debtor and the utilization of tax attributes by each. *See* 11 U.S.C. § 346 (1988). The House Report for § 346 contains these statements:

"From a bankruptcy perspective, equity suggests that unutilized tax attributes be utilized as 'assets' in order to facilitate the fresh start of the debtor. As a matter of policy, it would be unwise to discourage bankruptcy by denying the debtor tax benefits that would have been his to use but for the creation of the bankruptcy estate." H.R.Rep. 95–595, 95th Cong., 1st Sess. 284 (1977).

## VI. INSUBSTANTIAL NATURE OF PROPOSED ABANDONMENT

█ Taxes and the fresh start policy aside, the proposed abandonment to the Debtor should not be authorized because it lacks any substance. Title would be revested in the Debtor only for the purpose of an immediate divestiture through foreclosure. Indeed, with the foreclosure already having taken place, the proposed abandonment would be ephemeral to the extreme. For this reason alone, the Trustee should not be permitted to abandon the property to the Debtor. The only abandonment that I would authorize here is one which is not sought by the Trustee—abandonment to First Mutual.

## VII. SUMMARY

The Trustee's proposed abandonment of the Cliffside Apartments fails to meet the requisites of § 554. Because of the property's potential contribution to a chapter 11 plan of reorganization, a potential now being realized by the equally encumbered Fountainhead and Chapel Hill Apartments, the property was not of inconsequential value and benefit to the Debtor's estate at

the time of the requested abandonment. Even if it were, abandonment would be unnecessary in view of the pending foreclosure sale.

Nor would abandonment rid the estate of the burden of being taxed on the excess of the property's value over its basis. Because abandonment would occur prior to termination of the bankruptcy estate at the close of the chapter 11 case, and because it would in any event constitute a taxable sale, abandonment would be taxable to the Debtor's bankruptcy estate. In seeking to abandon the property, moreover, the Trustee is attempting to place form over substance by substituting a different seller in a pending sales transaction. Under the *Court Holding* doctrine, such a scheme would be unsuccessful; the estate would still be taxed on the foreclosure sale.

The Trustee's inability to abandon the property to the Debtor is not changed should the proposed abandonment be considered effective in making the Debtor taxable on the foreclosure sale. That tax burden would inhibit the Debtor's fresh start. Section 554 should be interpreted in a fashion which promotes the Debtor's fresh start where, as here, there is no countervailing consideration which overrides the fresh start policy.

Finally, abandonment to the Debtor should not be allowed because it lacks substance in light of the immediate foreclosure following abandonment.

## VIII. CONCLUSION

A separate order has issued denying the requested abandonment and declaring that First Mutual's foreclosure sale is taxable to the Debtor's bankruptcy estate. The order also declares that if abandonment to the Debtor is approved on appeal, it will be deemed to have taken place prior to the foreclosure sale.