**In re Richard H. RUBIN, Julia Lee Rubin, Debtors.**

**Bankruptcy No. 91–4–6042–PM.**

United States Bankruptcy Court,
D. Maryland,
at Rockville.

Dec. 4, 1992.

Michael J. Canning, Kelley Drye & Warren, New York City.

Lewis S. Goodman, Linda V. Donhauser, Miles & Stockbridge, Baltimore, MD.

David C. Roseman, Jones Day Reavis & Pogue, Washington, DC.

Michael E. Demont, Kirschner, Main, Petrie, Graham & Tanner, Jacksonville, FL.

Francis L. Carter, Coll, Davidson, Carter, et al., Miami, FL.

Richard H. Wyron, Arent Fox Kinter Plotkin & Kahn, Washington, DC.

William A. Moorman, Jr., John C. Craig, Craig & Macauley, P.C., Boston, MA.

Karen S. Jennemann, Mahoney Adams & Criser, Jacksonville, FL.

William P. Smith, Gary E. Green, Chapman & Cutler, Chicago, IL.

Jerome M. Janzer, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C., Milwaukee, WI.

M.A. Martinson, Milwaukee, WI.

Fred C. Harmeyer, c/o Dean Witter Realty, Inc., New York City.

Lisa Alpert Rosen, Powell, Goldstein, Frazer & Murphy, Washington, DC.

John Hurley, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY.

Timothy R. Epp, Rubin and Rudman, Boston, MA.

Nelson Deckelbaum, Deckelbaum, Ogens & Fischer, Washington, DC.

Richard P. Schifter, Richard M. Lucas, Arnold & Porter, Washington, DC.

## MEMORANDUM OF DECISION

(Motion to Modify Settlement Agreement)

PAUL MANNES, Chief Judge.

NationsBank of D.C., N.A. and Nations-Bank of Maryland (collectively "Nations-Bank" or the "Bank") and the Official Committee of Unsecured Creditors move for modification of an Order Approving Settlement Agreement Regarding Manatee Associates Limited Partnership, entered December 30, 1991. Movants seek to compel abandonment of the partnership interest in Manatee Associates Limited Partnership ("Manatee") held by the debtors' estate to the debtors by modification of this court's prior order approving a settlement agreement between Manatee and Marine Midland Realty Credit Corp. ("Marine"). Debtors oppose the proposed modification.

*The facts:* Debtor Richard Rubin is a general partner in Manatee Associates Limited Partnership and a guarantor of a real estate loan to Manatee in the original amount of $12,750,000. That loan is in default. Rubin's partnership interest in Manatee is property of the estate. In December, 1991, Rubin sought approval of a settlement between Manatee and its lender, Marine, whereby Marine would take back the property, release its claim against Manatee, and reduce its claim against the estate from a projected deficiency of $8.5 million to one of $2.5 million. This court approved the settlement agreement on December 30, 1991.

This transaction will result in a large gain for tax purposes on account of the debt forgiveness. Because Manatee is a partnership, the gain will flow through it to its partners, including Rubin. The amount of the gain that will be allocable to Rubin's partnership interest is approximately $1 million.

When the property is taken back by the lender, if the partnership interest remains property of the estate, the estate will have a tax liability of approximately $300,000 on the "gain." Pursuant to 11 U.S.C. § 554, movants contend that if the estate abandons Rubin's interest in Manatee prior to the conveyance, the transaction will result in tax liability not to the estate, but to the debtor individually.

As grounds for the proposed abandonment the Bank asserts that the interest in Manatee is of no value to the estate, that the settlement transaction would produce no income for the estate and that the deal would result in a large tax liability to the estate.

Debtors oppose this motion on several grounds:

—the motion is untimely;

—the settlement benefits the estate because of the resulting $6 million reduction in claims at a cost of only approximately $300,000 in taxes, yielding a $5.7 million net savings to the estate;

—the Bank has not made the required showing necessary to require an abandonment under 11 U.S.C. § 554;

—abandonment results in all of the benefit inuring to the estate, namely, the release of a $6 million claim, and all burdens imposed on the debtor; and

—shifting the tax liability to the debtors contravenes the policy of affording debtors a fresh start.

Debtors contend that the Bank had ample opportunity to object to the settlement agreement at the hearing before the court approved it. As no one objected at the hearing, and the issues addressed here could have been addressed then, debtors

argue that NationsBank lost its chance to object.

■ While movants might have acted sooner, this court does not find the timeliness argument dispositive. The court will not preclude the Bank from raising this issue now.

Debtors argue that the requisites of § 554 for abandonment have not been met. § 554(a) provides:

§ 554. **Abandonment of property of the estate.**

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

If the estate does not abandon the property, Marine's foreclosure relieves debtors of any administrative burden associated with the property. The Bank argues that retention of the property would result in the estate bearing the tax liability created by the foreclosure and that abandonment under § 554 prior to foreclosure would shift the tax liability to the debtor and benefit the estate. Debtor urges that abandonment now does not shift the tax liability.

■ The court will deny the motion for two reasons. This court adopts the reasoning set forth in the case of *A.J. Lane & Co. Inc.*, 133 B.R. 264, 269–273 (BC Mass.1991), that the suggested abandonment is a taxable event. Therefore, the estate does not escape taxation by abandoning the property to debtors. Further, the overriding bankruptcy policy of a fresh start militates against the fundamental unfairness of imposing this burden upon debtor after his emergence from Title 11.

The statutory treatment of transfers of property between the debtor and the bankruptcy estate is found in 26 U.S.C. § 1398. The pertinent parts of that section of the Internal Revenue Code appear below.

§ 1398. **Rules Relating to Individuals' Title 11 Cases.**

(a) **Cases to which section applies.**

Except as provided in subsection (b), this section shall apply to any case under chapter 7 (relating to liquidations) or chapter 11 (relating to reorganizations) of title 11 of the United States Code in which the debtor is an individual.

\* \* \* \* \* \*

(f) **Treatment of transfers between and estate.**

(1) **Transfer to estate not treated as disposition.** A transfer (other than by sale or exchange) of an asset from the debtor to the estate shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the estate shall be treated as the debtor would be treated with respect to such asset.

(2) **Transfer from estate to debtor not treated as disposition.** In the case of a termination of the estate, a transfer (other than by sale or exchange) of an asset from the estate to the debtor shall not be treated as a disposition for purposes of any provision of this title assigning tax consequences to a disposition, and the debtor shall be treated as the estate would be treated with respect to such asset.

\* \* \* \* \* \*

(i) **Debtor succeeds to tax attributes of estate**

In the case of a termination of an estate, the debtor shall succeed to and take into account the items referred to in paragraphs (1), (2), (3), (4), (5), and (6) of subsection (g) in a manner similar to that provided in such paragraphs (but taking into account that the transfer is from the estate to the debtor instead of from the debtor to the estate). In addition, the debtor shall succeed to and take into account the other tax attributes of the estate, to the extent provided in regulations prescribed by the Secretary as necessary or appropriate to carry out the purposes of this section.

Thus, two requirements must be met to avoid transfers from the estate to an individual debtor from being assigned the tax consequences attendant to a disposition: (1) the transfer must take place at the termi-

nation of the estate; and (2) the transfer must be one other than by sale or exchange.

■ One begins with the rule set out in *Yarbro v. Commissioner*, 737 F.2d 479, 483–486 (CA5 1984), *cert. denied*, 469 U.S. 1189, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985). There the Fifth Circuit dealt with a "sale or exchange" issue, and held that abandonment of unimproved real estate subject to nonrecourse debt constitutes a "sale or exchange" resulting in capital loss treatment.

In *In re A.J. Lane & Co., Inc.*, 133 B.R. 264 (BC Mass.1991), the Chapter 11 trustee likewise requested permission to abandon a mortgaged apartment complex to the debtor in order to shift the tax liability. Faced with similar arguments to those in the case at bar, Judge Queenan held that the proposed abandonment several weeks prior to a scheduled foreclosure on the property constitutes a taxable sale to the estate, not the debtor.

In construing § 1398(f)(2) of the Internal Revenue Code, Judge Queenan stated:

> The plain meaning of this provision is that it applies only to a transfer from the estate to the debtor at the termination of the estate.

The court found support for this conclusion by reading this section in conjunction with § 1398(i) that provides: "In the case of a termination of an estate, the debtor shall succeed to and take into account ... [the various tax attributes described]." The court also noted the symmetry of language between § 1398(f)(2) and (i) in its critique of some prior decisions:

> Unfortunately, the decisions to date have ignored the interplay of subsections (f)(2) and (i). In *In re McGowan*, 95 B.R. 104 (Bankr.N.D.Iowa 1988), at the request of the secured party, a chapter 7 trustee abandoned farm machinery in which the debtor had no equity. The trustee obliged the debtor by treating the abandonment as taxable to the estate, but the taxing authorities thought otherwise. Despite the overriding presence of the secured party, the court treated the abandonment as a nontaxable transfer to the debtor under § 1398(f)(2).

The court believed that the phrase "termination of the estate" could have any one of a number of meanings—completion of administration of the entire estate, termination of the estate's interest in specific property through abandonment, or termination of the estate's interest in particular property through foreclosure. The court interpreted the phrase to include abandonment, without even mentioning subsection (i), much less recognizing the symmetry between it and subsection (f)(2). Surprisingly, in the interpretation of this tax statute the court was influenced by the broad definition of "transfer" contained in § 101(50) of the Bankruptcy Code. The court expressed concern that treating abandonment as taxable to the estate would reduce the dividend to unsecured creditors. It expressed no similar concern for the effect that the debtor's tax liability from an ensuing foreclosure would have upon his fresh start.

*In re A.J. Lane & Co.*, 133 B.R. at 273.

As noted in *Lane*, the simple and unambiguous phrase "termination of the estate" has been twisted into several meanings such as completion of administration of the entire estate, termination of the estate's interest in specific property through abandonment, or termination of the estate's interest in particular property through foreclosure. *See In re McGowan*, 95 B.R. 104 (BC N.D.Iowa 1988). *See also In re Olson*, 100 B.R. 458 (BC N.D.Iowa 1989), *aff'd*, 121 B.R. 346 (BC N.D.Iowa 1990), *aff'd*, 930 F.2d 6, 8 (CA8 1991). ("We, like the bankruptcy and district courts, can see no reason why abandonment during the administration of the estate should have a different effect [than at the closing of the case].")

As the court points out in *Lane* at p. 273, the "unfound" reason that escaped the attention of the *Olson* courts is the absence of tax attributes under § 1398(i). Had the Eighth Circuit taken that fact into consideration, the result would have been different. The Eighth Circuit approved the following language from the trial court's decision as the foundation for the proposition adopted

by it that abandonment of property during the administration of a case was equivalent to a transfer at the termination of the bankruptcy estate:

Did the abandonment result from termination of the estate? The court noted in *McGowan* that the term "termination of the estate" is not defined in § 1398(f)(2) of Title 26. The court determined in *McGowan* at 107 that in the bankruptcy context the meaning of "termination of the estate" includes the termination of the estate's interest and property pursuant to 11 U.S.C. § 554(a).

It might be argued that the *McGowan* decision was overbroad in defining property abandonment during administration as "termination of the estate" under 26 U.S.C. § 1398(f)(2). Perhaps a better definition of "termination of the estate" is the "closing of a case." See 11 U.S.C. § 554(c). *Cf.* Treas.Reg. § 1.64(b)–3(a). This alternative was recognized in *McGowan* at 107.

If this be the meaning, then 11 U.S.C. § 554(c) and 26 U.S.C. § 1398(f)(2) would prevent the assignment of tax consequences to the estate when property is abandoned by operation of law as a result of its being unadministered at the close of a case. The court can see no reason why abandonment during administration should have a different tax effect. Abandonments during administration should also be covered by § 1398(f)(2).

*In re Olson*, 100 B.R. 458, 463 (BC N.D.Iowa 1989). *McGowan* was decided by the same bankruptcy judge who decided *Olson*. Similarly, the District Court on appeal, *In re Olson*, 121 B.R. 346, 348 (N.D.Iowa 1990) rewrote 26 U.S.C. § 1398(f)(2) and § 1398(i) and created a new judge-made basis for nonrecognition of property disposition by an estate.

■ Whatever the rule in the Eighth Circuit, it is unlikely that the Fourth Circuit would approve this court's revision of § 1398(f)(2) to comply with the Bank's desires. "[T]he fact that Congress might have acted with greater clarity or foresight does not give courts a *carte blanche* to redraft statutes in an effort to achieve that which Congress is perceived to have failed to do." *U.S. v. Locke,* 471 U.S. 84, 95, 105 S.Ct. 1785, 1793, 85 L.Ed.2d 64 (1985). In *United States v. James,* 834 F.2d 92 (CA4 1987) the Fourth Circuit states its guide for statutory construction:

Our analysis begins with the plain words of the statute. If the terms of this statute are unambiguous on their face, or in light of ordinary principles of statutory interpretation, then 'judicial inquiry is complete,' *Rubin v. United States,* 449 U.S. 424, 430 [101 S.Ct. 698, 701, 66 L.Ed.2d 633] (1981); there is no need to consult legislative history nor to look to the 'rule of lenity' that is applied in construing ambiguous criminal statutes.

When the terms of a statute are clear, its language is conclusive. Courts are not empowered to extend its meaning from unenacted legislative intent or to substitute their own statutory vision for that of the legislature. *See, United States v. Morison,* 844 F.2d 1057, 1064 (CA4 1988), *citing INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *First South Production Credit Ass'n v. Farm Credit Admin.,* 926 F.2d 339, 343–344 (CA4 1991); *Michigan Citizens for an Independent Press v. Thornburgh,* 868 F.2d 1285, 1293 (D.C.Cir.1989) ("For example, if Congress banned the importation of apples, oranges, and bananas from a particular country, the canon of *expresio unius est exclusio alterius* might well indicate that Congress *did not* intend to ban the importation of grapefruits").

This court adopts the *Lane* analysis. Congress enacting Section 1398(f)(2) of the Internal Revenue Code meant what it said—abandonment is not recognized as a transfer only when it occurs at the *termination of the* [bankruptcy] *estate.* The proposed abandonment in the case at bar is a recognizable transfer resulting in tax liability.

The Rubins argue that application of the doctrine of *Commissioner v. Court Holding Co.,* 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945) mandates that any

tax liability accruing as a result of the foreclosure sale should remain with the estate. In *Court Holding,* a corporation had agreed orally to sell real estate to a specific buyer. Subsequently, on the advice of tax counsel, the corporation distributed this property to its shareholders who then consummated the sale with the original purchaser on the same terms as initially agreed upon.

The Supreme Court found that this transaction was in the nature of a taxable sale and was designed to use the shareholders as a conduit to avoid the tax liability. The Court would not countenance permitting "the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities...." *Id.* at 334, 65 S.Ct. at 708.

Judge Queenan referred to the *Court Holding* doctrine in *Lane* stating,

> the proposed abandonment to the Debtor should not be authorized because it lacks any substance. Title would be revested in the Debtor only for the purpose of an immediate divestiture through foreclosure. Indeed, with the foreclosure already having taken place, the proposed abandonment would be ephemeral to the extreme. For this reason alone, the Trustee should not be permitted to abandon the property to the debtor.

*In re A.J. Lane & Co,* 133 B.R. at 274. *Court Holding* compels the conclusion that any tax liability accruing in this case will be imposed upon the estate and not the debtor.

■ Debtors further argue that the Bank may not compel abandonment of property in an effort to "accept only the beneficial features and reject the burdens with respect to the same item of property." The Bank is delighted with that part of the transaction resulting in the guarantor (Rubin) being freed of the obligation created by the multi-million dollar deficiency following the foreclosure sale. It accepts wholeheartedly the portion of the *Marine* settlement that benefits the estate. It rejects the burdens of the *Marine* settlement. The Bank cannot have the best of both worlds. As with the assumption of executory contracts under § 365, it cannot assume the favorable aspects of the transaction and reject the unfavorable aspects. *Dep't. of Air Force v. Carolina Parachute Corp.,* 907 F.2d 1469, 1472 (CA4 1990).

A similar argument was presented to the District Court in the case of *In re Laymon,* 1989 WL 252447 (D.Minn. July 25, 1989) and rejected. In *Laymon,* a Chapter 7 trustee's desire to abandon property prior to foreclosure was tax-driven, as he sought to shift $17,000 in tax liability to the debtors. Noting that the estate had benefited by holding the property for two years by collecting $22,000 in rental income, the court refused to allow the proposed abandonment.

In the case at bar, consummation of the settlement agreement will produce approximately $6 million in claims reduction savings to the estate at a cost of only $300,000 in tax liability. It is inequitable to permit the estate to enjoy the benefits of the proposed transaction and pass on the burdens to the debtors. This court will not allow it.

■ Finally, debtors argue that the imposition of $300,000 in tax liability upon them would destroy their opportunity for a fresh start after bankruptcy reorganization. Where there is no other overriding policy, the fresh start policy controls. *See, e.g., Local Loan Co. v. Hunt,* 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934), *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710–1711, 29 L.Ed.2d 233 (1971). (" '[O]ne of the primary purposes of the Bankruptcy Act' is to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.' ")

In the case at bar, there is no overriding policy militating against imposing this tax liability on the estate. As shown, there are compelling reasons for doing so. The court finds the arguments of the debtors compelling and persuasive. Accordingly, the Motions of NationsBank and the Official Committee will be denied.

Counsel for debtors shall submit an order in accordance with the foregoing.